**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| AGA Shareholders, LLC, an Illinois Limited Liability Company, | ) ) ) | No. CV-07-0062-PHX-DGC |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| CSK Auto, Inc., an Arizona corporation, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff AGA Shareholders has filed a motion for leave to file a first amended complaint. Dkt. #57. The Court has reviewed the memoranda filed by the parties. Dkt. ##58, 64, 65. For the reasons stated below, the Court will grant Plaintiff's motion.

**I.     Background.**

Plaintiff filed its Complaint against Defendant CSK Auto, Inc. in the Northern District of Illinois on February 14, 2006. Dkt. #58 at 2. The Complaint alleges that Plaintiff and Defendant entered into a contract to conduct business for a term of five years, but that Defendant breached the agreement after eleven months. *Id*. The original Complaint included claims for (1) anticipatory breach of a written contract, (2) anticipatory breach of an oral contract, (3) breach of contract for specially manufactured goods, and (4) breach of contract arising from failure to pay for products sold and delivered to Defendant. Dkt. #64 at 2.

On December 14, 2006, Judge Joan Gottschall of the Northern District of Illinois transferred the case to the District of Arizona. Dkt. #58 at 2. This Court issued a Case Management Order on March 22, 2007, setting the deadline for amending pleadings at 60

days from the date of the order. Dkt. #63 at 1. Plaintiff now seeks leave to amend its Complaint to state one new count against CSK and three counts against additional individuals who were officers of CSK at the time the alleged breach of contract occurred. Dkt. #58 at 2. The new Defendants (the "Individual Defendants") are former President and Chief Operating Officer Martin Fraser, former Chief Financial Officer Don Watson, and former Chairman and Chief Executive Officer Maynard Jenkins, the only officer still employed by CSK. Dkt. #57-2 ¶¶ 5-7. The new causes of action are breach of the implied covenant of good faith and fair dealing against CSK, and tortious interference with contract, civil conspiracy, and aiding and abetting against the Individual Defendants. *Id*. ¶¶ 49-58, 71-107.

## II. Legal Standard.

Motions to amend pleadings to add claims or parties are governed by Federal Rule of Civil Procedure 15(a). "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). "In exercising its discretion[,] . . . 'a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities. . . . Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted). "This liberality . . . is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The liberal policy in favor of amendments is subject to some limitations. Amendments may be denied in cases of undue delay, bad faith or dilatory motives on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment. *Foman*, 371 U.S. at 182. "The party opposing amendment bears the burden of showing prejudice," futility, or one of the other reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187.

/ / /

/ / /

**III. Discussion.**

**1. Tortious Interference with Contract**

Defendant argues that the Court should deny Plaintiff leave to add this claim because it could not survive dismissal. Because the CSK officers worked for Defendant, Defendant believes they could not interfere with the contract between CSK and AGA. This argument is incorrect. Defendant's cited authority deals with situations where officers could not be held liable for tortious interference when they acted on behalf of the company. *See, e.g.*, *Southern Union Co. v. Southwest Gas Corp.*, 165 F.Supp.2d 1010, 1038 (D. Ariz. 2001) (citing *Payne v. Pennzoil Corp.*, 672 P.2d 1322, 1327 (Ariz. Ct. App. 1983). As Plaintiff points out, its Amended Complaint alleges that the Individual Defendants acted outside the scope of their authority and not for the benefit of their employer and may thus be held liable for tortiously interfering with that employer's contract. *See Villodas v. HealthSouth Corp.*, 338 F.Supp.2d 1096, 1105 (D. Ariz. 2004). The Amended Complaint alleges that Defendant breached the contract with Plaintiff to enter into a new contract with a different vendor that, unlike Plaintiff, issued vendor credits on certain unsold or uncredited inventory. Dkt. #57-2 ¶¶ 80-84. Individual Defendants then allegedly issued false and misleading financial statements partially based on the inaccurate inventory figures resulting from the breach of contract. *Id.* ¶ 73. These false statements allegedly inflated the prices of CSK stock, which the Individual Defendants then sold for substantial profits. *Id.* ¶ 86. The Amended Complaint sufficiently alleges that the Individual Defendants acted for their own benefit when they tortiously interfered with the contract between Plaintiff and CSK.[1]

Defendant also argues that Plaintiff's "proposed tort claim for intentional interference with contract may not survive a Rule 12 motion in light of the economic loss rule." Dkt. #64

---

[1] Plaintiff also correctly distinguishes Defendant's non-binding state court authority that an agent cannot act against the principal's interest unless the principal objects to the agent's conduct. Here, there are allegations that two of the three Individual Defendants were terminated by CSK when the false statements came to light. *See* Dkt. #65 at 4 (discussing *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003)).

1   at 5.  The economic loss rule precludes a contracting party from recovering tort damages
2   from the other contracting party when the only harm is monetary.  *See, e.g.*, *Q.C. Constr.*
3   *Prod., L.L.C. v. Cohill's Bldg. Specialties, Inc.*, 423 F.Supp.2d 1008, 1015 (D. Ariz. 2006).
4   This argument does not provide grounds for denying leave to amend.  Plaintiff never alleges
5   that it had a contract with the Individual Defendants.  Nor are the Individual Defendants
6   owners of the corporation like the individual in *Q.C. Construction*. *Id*. at 1011.  Plaintiff's
7   tortious interference claim seeks damages from the non-contracting Individual Defendants,
8   not CSK.
9       Finally, Defendant argues that Plaintiff brought its tortious interference claim after the
10  statute of limitations had run.  The limitations period for tortious interference is two years.
11  *McManus v. Am. Express Tax. & Bus. Serv., Inc.*, 67 F.Supp.2d 1083, 1086 (D. Ariz. 1999)
12  (citing A.R.S. § 12-542).  The period begins to run when a plaintiff discovers or should have
13  discovered facts giving rise to the claim.  *Id*. at 1087.  Although Plaintiff learned of CSK's
14  alleged breach of contract in January of 2004, it allegedly had no reason to know that the
15  Individual Defendants had tortiously interfered with such a contract until March of 2006,
16  when CSK publicly admitted to financial misstatements.  Plaintiff's knowledge of the breach
17  of contract in January of 2004 does not imply that it should have known that the contract was
18  breached due to tortious interference at that time.  The Court cannot conclude on the basis
19  of the proposed pleadings that Plaintiff's claim is untimely.

20      **2.     Civil Conspiracy; Aiding and Abetting.**

21      Defendant addresses these claims together, arguing that they are "derivative and
22  dependent on the validity of AGA's purported claim for tortious interference with contract."
23  Dkt. #64 at 6.  Because the Court is allowing Plaintiff to add the tortious interference claim,
24  it will allow Plaintiff to add these claims as well.

25      **3.     Breach of the Implied Covenant of Good Faith and Fair Dealing.**

26      Plaintiff states that it seeks to add this claim now, rather than in its original Illinois
27  complaint, because Illinois courts do not recognize it.  Dkt. #58 at 4.  Defendant cites an
28  Illinois case that did recognize this cause of action, but does not argue that leave to amend

should be denied because the claim was available in Illinois. Dkt. #64 at 7 (citing *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. 2004)).

Defendant argues that breach of the implied covenant of good faith and fair dealing cannot be an independent claim in an action for breach of contract because the damages for both claims are the same. Dkt. #64 at 8 (citing *Nelson v. Phoenix Resort Corp., Inc.*, 888 P.2d 1375, 1384 (Ariz. Ct. App. 1995)). Arizona law holds, however, that a "party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the underlying contract." *United Dairymen of Arizona v. Schugg*, 128 P.3d 756, 760-61 (Ariz. Ct. App. 2006). Plaintiff may argue that even if it cannot show that CSK breached the express terms of the contract, CSK kept Plaintiff from receiving the benefits of the contract. Moreover, even if the damages for both claims are the same, Plaintiff may plead alternate theories of liability.

Finally, Defendant contends that this claim will be futile, wasteful, and prejudicial because "an implied covenant of good faith and fair dealing cannot directly contradict an express contract term." Dkt. #64 at 8 (quoting *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004)). At this point in the litigation, however, the parties disagree on the express terms of the contract.

**4.    Prejudice.**

Defendant argues that it will suffer prejudice as a result of Plaintiff's proposed amendment (Dkt. #64 at 10), but does not explain how. Any prejudice to Defendant CSK is especially unclear considering that three of the four claims involve the Individual Defendants rather than CSK.

Defendant next argues that the amendments might create delay, but again does not explain how. In any case, delay by itself does not justify denying a motion to amend. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712-13 (9th Cir. 2001).

Defendant also contends that granting Plaintiff leave to amend "will waste the Court's and the parties' resources by diverting this Court's and the parties' attention to trying untimely and substantively weak claims that stand to alter the nature and course of the

1 currently stated claims" and may require severance from the original claims at trial. Dkt. #64 at 10-11. Defendant cites no authority for its position that the weakness of a claim or the possibility of severance requires denial of leave to amend. Because the Court cannot say at this stage that Plaintiff's claims are too weak to withstand a motion for summary judgment, leave to amend will be granted.

### 5. Discovery Concerns.

Defendant is concerned that Plaintiff's law firm, Bonnett, Fairbourn, Friedman & Balint, P.C., may attempt to use the proposed amendment to circumvent an automatic stay of discovery in another case involving CSK. Bonnett Fairbourn is the local counsel for the named plaintiff in two securities class action lawsuits consolidated as *Communication Workers of America Plan for Employees' Pensions and Death Benefits v. CSK Auto Corporation*, No. CV-06-1503-PHX-DGC. An automatic stay of discovery applies to that case under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3). *See Medhekar v. United States Dist. Court*, 99 F.3d 325, 328-29 (9th Cir. 1996). Defendant is concerned that granting leave to amend will allow Plaintiff and Bonnett Fairbourn to propound discovery that will aid the plaintiff in the securities class action.

The automatic stay in securities actions serves the dual purposes of "minimizing unnecessary imposition of costs on defendants" and ensuring that securities fraud complaints "stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Id.* at 328. Defendant does not explain, and it is not apparent to the Court, why allowing discovery to proceed in this case would thwart the policy objectives behind the stay of discovery in *Communication Workers*. This case primarily involves a contract dispute between Plaintiff and Defendants. No cost savings will result from a stay of discovery in this case because such discovery will be necessary regardless of whether the securities fraud action survives a motion to dismiss. Moreover, the plaintiff in the securities fraud action must file an amended complaint in the near future. Discovery in this case is not likely to aid in that effort.

///

1   **IT IS ORDERED** that Plaintiff's motion for leave to file a first amended complaint
2  (Dkt. #57) is **granted**.  The Clerk shall file the amended complaint (Dkt. #60) previously
3  lodged by Plaintiff.
4   DATED this 11th day of April, 2007.

_____
David G. Campbell
United States District Judge