**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AGA Shareholders, LLC, an Illinois Limited Liability Company,<br><br>    Plaintiff,<br><br>vs.<br><br>CSK Auto, Inc., an Arizona corporation,<br><br>    Defendant. | No. CV-07-0062-PHX-DGC<br><br>**ORDER** |

Defendant Martin G. Fraser has filed a motion to dismiss. Dkt. #90. Defendant Maynard L. Jenkins has joined in the motion. Dkt. #91. The Court has reviewed the memoranda filed by the parties. Dkt. ##90, 93, 94, 95. For the reasons stated below, the Court will deny Defendant's motion.

**I.  Background.**

Plaintiff filed its Complaint against Defendant CSK Auto, Inc. on February 14, 2006, alleging that Plaintiff and CSK entered into a contract to conduct business for a term of five years, but that CSK breached the agreement after eleven months. *See* Dkt. #68 ¶¶ 10-22.[1] On April 11, 2007, the Court granted Plaintiff leave to amend its Complaint to include claims against Defendants Fraser, Jenkins, and Don Watson, former officers of CSK (collectively

---

[1] Plaintiff AGA Shareholders, LLC was assigned the claims of American Generator & Armature Company, which went out of business allegedly due to Defendants' actions. Dkt. #68 ¶ 3. Although Plaintiff is not the corporate entity whose contract with CSK is the subject of this litigation, the Court will use the term "Plaintiff" throughout this order to refer to AGA Shareholders, LLC and to American Generator & Armature Company.

"Individual Defendants"), for tortious interference with contract, civil conspiracy, aiding and abetting, and breach of the implied covenant of good faith and fair dealing. Dkt. #67.

Defendant CSK purchased alternators and starters from Plaintiff. Dkt. #68 ¶ 79. A central component of an alternator and starter is a core, which can be recycled after the rest of the product is depleted. *Id.* ¶ 77. When CSK purchased starters and alternators from Plaintiff, it paid a deposit for each core that would be refunded when CSK returned spent cores to Plaintiff. *Id.* ¶ 79. The Complaint alleges that in 2003, CSK had several million dollars worth of spent cores in its inventory. *Id.* ¶ 80. Unlike Plaintiff, another company, Unit Parts, was willing to issue credits to CSK for cores before they were returned. *Id.* ¶ 84. The Complaint alleges that the Individual Defendants caused CSK to abandon its contract with Plaintiff and sign a contract with Unit Parts so that CSK could receive credit for spent cores before they were returned. The Individual Defendants then allegedly issued false and misleading financial statements partially based on the inaccurate inventory figures resulting from the inventory credits. *Id.* ¶ 73. These false statements allegedly inflated the price of CSK stock, which the Individual Defendants then sold for substantial profits. *Id.* ¶ 86.

**II.     Discussion.**

      **A.     Tortious Interference with Contract.**

The elements of a tortious interference with contract claim are (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship or expectancy has been disrupted, and (5) proof that the defendant acted improperly. Restatement (Second) of Torts § 766 (adopted by *Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1043 (Ariz. 1985)).

Defendant Fraser argues that even though fraud is not an essential element of a tortious interference claim, Federal Rule of Civil Procedure 9(b) applies. Dkt. #90 at 6. Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The Ninth Circuit has stated that "where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint

1  that the defendant has engaged in fraudulent conduct." *Vess v. Ciba-Geigy Corp., USA*, 317
2  F.3d 1097, 1103 (9th Cir. 2003). In those cases, "the plaintiff may allege a unified course
3  of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In
4  that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading
5  of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*.

6  Defendant Fraser argues that Plaintiff's tortious interference claim alleges a unified
7  course of fraudulent conduct and is thus subjected in its entirety to Rule 9(b). Dkt. #90 at 6.
8  Defendant does not explain or provide authority for what would be considered a unified
9  course of fraudulent conduct. Defendant argues that because Plaintiff alleged in its motion
10 to amend that Defendant Fraser acted in his individual interests and not Defendant CSK's
11 interests, and because Plaintiff includes allegations of fraud to support Defendant Fraser's
12 motive, the claim "necessarily sounds in fraud." Dkt. #90 at 7.

13 The Court disagrees. Unlike cases in which courts have subjected non-fraud claims
14 to Rule 9(b), Plaintiff's complaint does not contain pervasive references to fraud, and,
15 notably, does not allege that Plaintiff was damaged by the alleged fraud. *See In re Daou*
16 *Systems, Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005); *Borsellino v. Goldman Sachs Group,*
17 *Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rather, Plaintiff alleges that the Individual
18 Defendants tortiously interfered with Plaintiff's contract for the purpose of committing fraud
19 on CSK shareholders. Dkt. #68 ¶ 86. The fact that Plaintiff did not seek to amend its
20 Complaint until reading a fraud complaint in a class action against Defendants does not
21 mean, as Defendant Fraser contends, that Plaintiff's tortious interference claim is grounded
22 in fraud. The fraud complaint may have revealed facts – such as the Individual Defendants'
23 alleged motive – that rendered the amended claims viable.

24 The Court will therefore follow the rule announced in *Vess* that "[w]here averments
25 of fraud are made in a claim in which fraud is not an element, an inadequate averment of
26 fraud does not mean that no claim has been stated. The proper route is to *disregard*
27 averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been
28 stated." *Vess*, 317 F.3d at 1105 (emphasis in original).

1  The complaint alleges that "Jenkins, Fraser and/or Watson . . . desired immediate
2 credit for the cores so that . . . CSK's stock would increase. Jenkins, Fraser and/or Watson
3 thereby sought a way in which to accrue immediate credits for the cores even if it caused
4 CSK to breach existing contractual relations." Dkt. #68 ¶ 81. Apparently having found a
5 way to obtain credit for the cores, "Jenkins, Fraser and/or Watson caused or induced CSK
6 to terminate AGA as CSK's manufacturer of [alternators and starters]," "caused or induced
7 CSK to fail to pay for invoices due to AGA," and "caused the agreement to be executed [with
8 Unit Parts]." *Id*. ¶¶ 83-85. Then, "[i]n 2003 and 2004, Jenkins, Fraser and Watson issued
9 false and misleading statements about CSK's income, earnings and internal controls.
10 Jenkins, Fraser and/or Watson also prepared or caused the preparation of false financial
11 statements and caused CSK to issue to false financial statements." *Id*. ¶ 73. Plaintiff then
12 alleges that Defendants Jenkins, Fraser, and Watson sold CSK stock while it was "artificially
13 inflated due to Jenkins, Fraser and Watson's actions and false statements." *Id*. ¶ 75.

14  "To meet the Rule 9(b) particularity requirement, a plaintiff must set forth more than
15 the neutral facts necessary to identify the transaction. The plaintiff must set forth what is
16 false or misleading about a statement, and why it is false." *Orthologic Corp. v.*
17 *Columbia/HCA Healthcare Corp.*, No. CIV 01-0006-PHX-SRB, 2002 WL 1331735 at *2
18 (D. Ariz. Jan. 7, 2002) (citing *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir.
19 1999)). A plaintiff must also "state the time, place, and specific content of the false
20 representations as well as the identities of the parties to the misrepresentation." *Schreiber*
21 *Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess*,
22 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when,
23 where, and how of the misconduct charged."); *Lancaster Cmty. Hosp. v. Antelope Valley*
24 *Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (Rule 9(b) "requires a pleader of fraud to detail with
25 particularity the time, place, and manner of each act of fraud, plus the role of each defendant
26 in each scheme.").

27  Plaintiff's averments of fraud do not comport with the particularity requirement of
28 Rule 9(b). In many instances the Complaint entirely fails to allege the role of each Defendant

- 4 -

1 in the fraudulent scheme, instead alleging that fraud was committed by "Jenkins, Fraser and/or Watson." *See* Dkt. #68 ¶¶ 73, 81, 83-86. While Plaintiff is correct that in cases involving corporate fraud a plaintiff may sometimes engage in "group pleading" without specifying the role of each defendant, Plaintiff's pleading of Defendant Fraser and Jenkins' roles is insufficient. *See* Dkt. #93 at 14. The Ninth Circuit has allowed group pleading in the corporate fraud context when the "complaint provid[ed], in nineteen separate paragraphs, the date of each of these publications, specific descriptions of the representations made, the reasons for their falsity, and, where possible, the role of the individual defendants in preparation and dissemination." *See Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). Plaintiff's Complaint does not contain a similar degree of detail.

While Plaintiff vaguely alleges the date and substance of the press releases in which CSK admitted it had issued inaccurate accounting statements, Plaintiff does not allege any details about the specific misrepresentations made by the Individual Defendants, including the contents of any statements or what was false about them. *See* Dkt. #68 ¶¶ 74, 76. In fact, Plaintiff does not even allege which part of which allegedly false financial statement reflected the improper credits for the spent cores.

Essentially, Plaintiff admits that its only evidence of fraudulent conduct by the officers is the "corporate admissions of wrongdoing regarding financial statements" and a "corporate statement wherein CSK essentially admits that it terminated the employment of Fraser and Watson as a result of the false financial statements and material accounting errors." Dkt. #93 at 15. While the admission of accounting irregularities may have signaled poor accounting practices on the part of CSK, nothing about the admission implies that fraudulent conduct caused the irregularities. Nor does the corporate statement in which CSK announced the departure of Fraser and Watson imply that they were terminated for fraud rather than for simply being ineffective officers. Because Plaintiff has failed to allege sufficient details about the allegedly fraudulent actions of any Individual Defendant, the Court will disregard all averments of fraud – Paragraphs 73, 75, 77 (first sentence only) and 81 – in Plaintiff's tortious interference allegations. *See Vess*, 317 F.3d at 1105.

1  Having disregarded those paragraphs, the Court must now determine whether the complaint states a claim for tortious interference under traditional notice pleadings standards. That Court finds that it does. Plaintiff has properly pled the first two elements of a tortious interference claim – the existence of a valid contract between Plaintiff and Defendant CSK, and Defendants' knowledge of that contract. *See* Dkt. #68 ¶¶ 80, 82. Plaintiff has adequately pled the third element – that the Individual Defendants intentionally caused a breach of the contract (*see id.* ¶ 83), and the fourth element – resultant damage from the breach (*id.* ¶¶ 88-90).

Plaintiff has also adequately pled the fifth element – that the Individual Defendants acted improperly in causing CSK to breach its contract with Plaintiff. This element is satisfied when the allegations show that the interference is improper "as to motive or means." *Wagenseller*, 710 P.2d at 1043. To determine whether the motive or means were improper, a court may examine (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests that were defeated, (4) the interests that the actor sought to advance, (5) the social interests involved, (6) the proximity of the actor's conduct to the interference, and (7) the relationship between the parties. *Id.* at 1042 (citing Restatement (Second) of Torts § 767). The first and second factors are the most important. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 32 (Ariz. 2002).

After alleging the nature of Defendants' conduct – that they caused or induced CSK to breach its contract with AGA (Dkt. #68 ¶ 83) – Plaintiff alleges that Defendants' "motive in taking such actions was to increase CSK's stock price in the short term so they could profit from the sale of their CSK stock." *Id.* ¶ 86. This pleading of motive is sufficient. Indeed, Defendant Fraser concedes that by pleading motive generally, Plaintiff has satisfied this fifth element of the tort of tortious interference. Dkt. #94 at 5.

Taking all of Plaintiff's allegations as true, and assuming that all general allegations "embrace whatever specific facts might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), the Court finds that Plaintiff has

adequately stated a cause of action for tortious interference. The insufficient fraud allegations relate primarily to the Individual Defendants' motives, which in turn relate to whether the Individual Defendants were acting for their own benefit rather than CSK's. As the case moves forward, Plaintiff must still prove that each of the Individual Defendants "acted so contrary to the principal's interests that his actions could only have been motivated by personal interests." *Southern Union Co. v. Southwest Gas. Corp.*, 165 F.Supp.2d 1010, 1038 (D. Ariz. 2001).

Defendant Jenkins requests that the Court instruct that Defendants are not required to answer the fraud allegations in the complaint. Dkt. #95 at 6. As mentioned above, the proper route in deciding a motion to dismiss on a claim of which fraud is not an element is to disregard averments of fraud that do not meet Rule 9(b)'s particularity requirement and then determine whether a claim has been stated. *See Vess*, 317 F.3d at 1105. The Ninth Circuit has also stated, somewhat differently, that any allegations of fraud that do not comport with Rule 9(b) should be "*stripped from the claim.*" *In re Daou*, 411 F.3d at 1028 (emphasis in original). The Court will therefore not require Defendants to answer Paragraphs 73, 75, 77 (first sentence only), and 81 of Plaintiff's tortious interference claim, which contain insufficient allegations of fraud.

### B. Civil Conspiracy and Aiding and Abetting.

In Arizona, both civil conspiracy and aiding and abetting are derivative torts for which a plaintiff may recover only if it has adequately pled an independent primary tort. *See Rowland v. Union Hills Country Club*, 757 P.2d 101, 110 (Ariz. App. 1988) (civil conspiracy); *Wells Fargo Bank*, 38 P.3d at 23 (aiding and abetting). The claims for civil conspiracy and aiding and abetting in the Complaint clearly derive from the tortious interference claim. *See* Dkt. #68 ¶ 92 (Defendants "met, joined together, planned, and conspired to induce CSK to terminate the Agreement and to not pay AGA for its outstanding invoices."); ¶ 104 (Defendants "substantially assisted or encouraged the other or others in the achievement of the tort" of interference with contract.). Because the Court will not dismiss the tortious interference claim against Defendants Fraser and Jenkins, the Court will

1  not dismiss the civil conspiracy and aiding and abetting claims.

2  **IT IS ORDERED:**

3  1. Defendant Martin Fraser's motion to dismiss (Dkt. #90), in which Defendant
4  Maynard Jenkins has joined (Dkt. #91), is **denied**.

5  DATED this 10th day of August, 2007.

*David G. Campbell*
United States District Judge